STATE *vs.* RAYMOND COLEMAN.

MARCH 19, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This petition for a writ of *certiorari* was brought by the state against the district court of the first judicial district, whereof Robert M. Franklin, Esq., is justice, and a citation was issued to one Raymond Coleman, the defendant in a criminal case pending in that court. The writ was issued in accordance with the petition, and commanded the production of a certain record wherein the said district court ordered the return to Coleman of a dredge now in the possession of the department of state police of this state.

The petition alleges that Coleman is a defendant in a complaint and warrant pending in the said court charging him with illegally dredging quahaugs on December 12, 1935, in a restricted area in the Sakonnet River, and that when he was arrested, the dredge was seized as evidence by the state police.

After setting out these facts, the petition alleges that on December 17, 1935, Coleman filed a motion, in the criminal case then pending against him, for an order from the court directing the state police to return the dredge to him. The grounds of this motion were that the dredge

was unlawfully seized and detained, and further, that he needed the dredge to pursue his calling as a licensed fisherman. The superintendent of the state police, Edward J. Kelly, and certain other officers, appeared with counsel before the district court on December 20, 1935, in answer to a citation issued by that court upon Coleman's motion, and on that day the court heard the motion on arguments of counsel, but asked for and received no evidence from either side on the point in issue. On December 24, 1935, the court, without any evidence to support its action, granted the motion and ordered the return of the dredge to Coleman. The state thereupon brought this petition for a writ of *certiorari,* claiming that, in making such an order, the court acted without jurisdiction or in excess of the jurisdiction conferred upon it by general laws, 1923, chap. 407, sec. 66.

Counsel for Coleman sketchily contended before us that the state is not entitled to a writ of *certiorari* in a criminal case, and that, inasmuch as sec. 66 confers jurisdiction in the premises on the district court, its action is not reviewable at the instance of the state. The brief which was filed in support of this claim is nothing more than a restatement of these contentions and gives us no assistance by way of sound legal reasoning or authority in determining the important issues raised in the case. An exhaustive or voluminous brief is neither necessary nor desirable, but it should contain considerably more than the mere statement of a premise and a conclusion.

The respondent cites only two authorities in his brief. He quotes from "Appeal and Error", 2 Cyc. 507, as follows: "By the English common law the judgments of the court of common pleas and of all inferior courts were brought under the review of the king's bench, *for revision and correction,* by writ of error, *writ of certiorari,* or writ of false judgment." The second authority upon which he relies is a part of the quotation from a Massachusetts case that this court used in its opinion in *McAloon* v. *License Commis-*

*sioners,* 22 R. I. 191, 193: " 'A writ of *certiorari* is in the nature of a writ of error.' " *Farmington River Water Power Co.* v. *County Commissioners,* 112 Mass. 206. From these general and fragmentary statements the respondent argues that, since *certiorari* is an "appellate proceeding" and the state has no appeal in a criminal case, therefore *certiorari* is not maintainable at the instance of the state in the case at bar.

The respondent relies on the similarity of a writ of error with a writ of *certiorari* to support his contention that this proceeding is an appeal, which is denied to the state. It is true that this court in *McAloon* v. *License Commissioners, supra,* said that a writ of *certiorari* is in the nature of a writ of error, but later, in *MacKenzie & Shea* v. *Rhode Island Hospital Trust Co.,* 45 R. I. 407, it was pointed out that, while there were certain similarities between these two writs, they were not the same. *Certiorari* is the broader writ. It is not a writ of strict right and will be issued by this court in the exercise of its general revisory and appellate jurisdiction to prevent harm and promote justice only when no other remedy is available.

In the absence of constitutional or statutory provisions giving the state the right of appeal under certain conditions in criminal cases, the overwhelming weight of authority in this country is that the state cannot have the action of an inferior court in the judicial exercise of its lawful jurisdiction reviewed. Where a right of review by a higher court is specifically granted to the state in a criminal case, a writ of error may be used by the state to review the record of a final judgment by an inferior court in quashing, dismissing or sustaining a demurrer to a complaint, indictment or information. *People* v. *Barber,* 348 Ill. 40; 92 A. L. R. 1137. See *Commonwealth* v. *Capp,* 48 Pa. 53. Under such circumstances, which do not raise any question of jurisdiction, a writ of error provides a method for the state to obtain such a review of a decision by an inferior court on the legal sufficiency of the criminal charge.

The privilege of any sort of an appeal from a decision on the merits of a criminal charge is not expressly granted to the state by our laws.

It does not follow, however, that the people of this state, as represented by the attorney general, are to be deprived in the enforcement of the criminal laws of all protection by this court when an inferior court assumes to act without jurisdiction or in excess of jurisdiction in connection with a criminal case. With us a writ of *certiorari* is an original prerogative writ. *Parker* v. *Superior Court*, 40 R. I. 214, 218. The primary office of *certiorari* is to review the action of an inferior court or tribunal taken without jurisdiction or in excess of the jurisdiction given to it. *Cohen* v. *Superior Court*, 39 R. I. 272, 275. Section 1, art. XII of the amendments to our constitution, gives this court "final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall have such other jurisdiction as may, from time to time, be prescribed by law." By sec. 2, chap. 322, general laws, 1923, this court is empowered to exercise "general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs of habeas corpus, of error, *certiorari,* mandamus, prohibition, quo warranto, and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law." In view of these provisions, the original scope of the writ of *certiorari* has been somewhat extended by our decisions, for the purpose of carrying out the revisory and appellate power of this court for the furtherance of justice and the due administration of the law. *Cohen* v. *Superior Court, supra.*

A writ of *certiorari* is an "appellate proceeding", as the respondent calls it in this case, only in the sense that it issues from this court for the purpose of reviewing the action of an inferior court. It does not reach the merits of any judicial action by an inferior court taken in the exer-

cise of jurisdiction possessed by such court, but generally concerns itself with the question whether, in taking ·such action, the inferior court acted without jurisdiction or in excess of jurisdiction. Considering the primary office of a writ of *certiorari* and our decisions in reference thereto, in the light of the revisory power over inferior tribunals vested in this court by the constitution and laws of ·this state, we are of the opinion that *certiorari* lies in favor of the state in a criminal case to determine whether such tribunal is acting without jurisdiction or in excess of jurisdiction.

We find two cases in this state where a *defendant* in a criminal case complained that an inferior court.was acting in excess of its jurisdiction, and invoked the revisory power of this court by writ of *certiorari*. In both cases this court entertained a petition for a writ of *certiorari* on the defendant's claim that the inferior court acted in excess of jurisdiction in finding him guilty of a lesser charge than the one set out in the complaint or indictment, but it denied the writ in each case on the ground that the action of the inferior court was not in excess of its lawful jurisdiction. *Kenney* v. *State*, 5 R. I. 385; *Antoscia* v. *Superior Court*, 38 R. I. 332.

There is no decision in our reports where the state, in a criminal case, has alleged that the action of an inferior court was without or in excess of jurisdiction,.and invoked the exercise of the revisory power of this court by writ of *certiorari* for the furtherance of justice and the due administration of the law. We see no reason, however, why the people of this state, acting by the attorney general in a criminal case, should not be protected by a writ of *certiorari* against the attempted exercise by an inferior court of a jurisdiction not possessed by it, or against a clear abuse of its jurisdiction, where such protection is, in the interests of justice, required of this court in the exercise of its general supervisory jurisdiction.

In the course of our investigation we have found authority to the effect that the common law writ of *certiorari* is

open to the state in criminal cases, especially in cases of removal and of questions of jurisdiction. Harris on *Certiorari*, § 141; Roberts, Extraordinary Legal Remedies, p. 621. There is little doubt but that in England the writ issued as a matter of right at the instance of the Crown. In this country, excluding those decisions that are controlled by constitutional or statutory provisions, only a few cases have come to our notice that throw any light upon the issue before us.

The writ of *certiorari* has been employed by the state to secure a change of venue when it appeared that a fair and impartial trial could not be had in the county where the indictment was found. *People* v. *Vermilyea*, 7 Cow. 108, (1827); *People* v. *Webb*, 1 Hill, 179, (1841). In *People* v. *Baker*, 3 Parker, Crim. Rep. 181, (1858), where the common law writ of *certiorari* was being considered in connection with a statute of the State of New York, the court, at page 191, says: "In this state, where the people have acquired the rights originally appertaining to the crown of England in criminal cases, except where they are inconsistent with our form of government, or have been expressly abrogated (and neither is the case here), it is safe to conclude that the well settled rights of the public have not been taken away by a remote inference."

In *State* v. *Stone, et al.*, 3 Harris & McH. (Md.) 115, the county judges proceeded with the trial of a criminal case in disregard of a writ of *certiorari* issued by the general court ordering the removal of the case for trial in that court. The judges of the county court were fined for contempt. In *State* v. *Zabriskie*, 43, N. J. L. 369, the judges of the trial court were deadlocked on the question of what sentence should be imposed upon a convicted defendant. The state petitioned the supreme court for a writ of *certiorari* "in order that the sentence of the law be then passed upon the defendant." The petition was granted and the writ issued.

The recent case of *State* v. *Then*, 177 A. (N. J., 1935)

87, is important and deserves special consideration. In that case four indictments were returned against two defendants, officers of a trust company, charging them with larceny · and embezzlement of securities, valued at over $80,000, from the estate of. a deceased person whose estate was being administered by the trust company of which they were officers. The trial court quashed the indictments, whereupon a writ of *certiorari* was prosecuted by the state at the instance and with the assistance of the local bar association. It appears from the opinion that in New Jersey the state has a right to appeal to the court of errors and appeal for a review of adverse rulings by the trial court in the course of the trial, but no right of appeal from the action of an inferior court in quashing an indictment.

In the *Then* case, the supreme court of that state, before trial, issued the writ of *certiorari* on the ground that the inferior court arbitrarily and in clear "abuse of the legal discretion ordinarily vested in the trial judge" granted the motion to quash the particular indictment before it. In discussing the defendant's claim that the quashing of the indictment was a matter of judicial discretion and, therefore, not a proper subject-matter for· review by *certiorari*, the court, at page 88, quotes Lord Mansfield in *Rex* v. *Wilkes*, 4 Burr. 2527, 2539, and says: "But discretion, when applied to a court of justice, means sound discretion, guided by law. It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular. . . . Our courts have at all times endeavored to and have, in fact, exercised their judicial powers to the end of preserving and protecting the rights of all litigants. Our reports are replete with all classes of cases, civil and criminal, particularly the .latter, wherein` the courts have checked and stayed the invasion of, or the assault upon, the human and property rights of all parties. And at the same time our courts have not been unmindful of the fact that society generally through the medium

of its enforcing agency in criminal matters, the state, was also entitled to and did receive like attention. It would indeed be a travesty on justice if it were otherwise."

In view of the apparent diversity of procedure in this state and in New Jersey, we wish it clearly understood that this decision of the New Jersey court is referred to by us solely to indicate the attitude which courts of review in this country may properly take at the instance of the state in criminal cases, when the protection of the law can thus be extended to the people of the state without impairing or infringing upon any substantial right of a defendant. After serious consideration and for the reasons stated, we are of the opinion that this court has the necessary jurisdiction to issue a writ of *certiorari* in such a case as the one now before us.

The second question is whether the district court, in proceeding without legal evidence when it issued the order of restoration, acted without jurisdiction or in excess of the jurisdiction conferred upon it by sec. 66, chap. 407, G. L. 1923, which reads as follows: "All property, money or estate taken or detained as evidence in any criminal case shall be subject to the order of the court before which the complaint or indictment shall be brought or pending, and *shall, at the termination thereof, be restored to the rightful owner.*" (Italics ours.) This section first appeared in its present form as sec. 31, chap. 222, Rev. Stat. 1857. The words in italics were not in the section before that time. We do not intend to construe the present sec. 66, except in so far as it is necessary to do so in order to determine the question of the validity of the action of the district court as shown by the record now before us.

It is obvious that sec. 66 is a protective statute, whose primary object is to place "all property, money or estate taken or detained as evidence in any criminal case" under the protection of the court to which a peace officer is required to make his return, or of any other court in which the offense is triable. The provision that such property

"shall be subject to the order of the court before which the complaint or indictment shall be brought or pending", brings the interests of the state and of the defendent in respect to such property under the protection of the law and so tends to assure to both a fair and impartial trial. The statute expressly provides that the court in which a criminal case ends "shall, at the termination thereof" restore the property taken or detained as evidence in the criminal case to the rightful owner. The jurisdiction of the court in such a case is clear. The amendment of 1857 to sec. 66 is a limitation upon the power of the court as to the retention of property taken or detained as evidence in a criminal case. The determination of the question of just what, if any, jurisdiction is conferred by the statute upon a court, in which a complaint or indictment is brought or pending, to order the restoration of such property to a defendant before the termination of the criminal case, is not required by the facts alleged in this petition and admitted by the respondent. It may be that under certain circumstances, established by legal evidence, the court before which the case is pending has jurisdiction to order the restoration of such property to its owner even before the trial of the criminal case. But this we do not decide because it is not presented by the situation that confronts us. In the instant case, the district court assumed jurisdiction to order such restoration without the introduction of any legal evidence that might justify the exercise of jurisdiction. Allegations in the pleadings and representations of counsel are not legal evidence.

Where jurisdiction depends upon the existence of certain facts, such facts must be established by legal evidence before jurisdiction will attach. The existence of a jurisdictional fact or its determination will not be presumed simply from the exercise of jurisdiction, nor can it be inferred by argument from other recitals. *People's Savings Bank* v. *Wilcox*, 15 R. I. 258; *Lonsdale Co.* v. *License Commissioners*, 18 R. I. 5. *Certiorari* lies to determine whether

the facts necessary to give an inferior tribunal jurisdiction were present. *State* v. *Board of Aldermen*, 18 R. I. 381, 382; *McAloon* v. *License Commissioners*, 22 R. I. 191, *supra; Coggeshall* v. *Harbor Commission*, 50 R. I. 175.

In view of these and other authorities, we have reached the conclusion that in the instant case, if. the district court had jurisdiction to order a restoration of the property under certain circumstances, it exercised such jurisdiction without any competent legal evidence of the existence of such circumstances.

We therefore hold that the district court of the first judicial district acted in this case in excess of jurisdiction in entering the order in question; that its proceedings in relation thereto were void; and that the record thereof must be quashed.

*John P. Hartigan, Attorney General, Michael De Ciantis, Third Assistant Attorney General,* for State.

*William G. Troy, Joseph C. Cawley,* for respondent.