237 A.2d 325.

IN THE MATTER OF STEVEN A. LITTLE.

JANUARY 18, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. On November 10, 1964, a petition was filed in the family court at the instance and request of the Warwick police department asking that Steven A. Little, then

12 years of age, be declared wayward[1] for having wilfully and maliciously injured and destroyed property belonging to the New York, New Haven and Hartford Railroad in violation of the provisions of G. L. 1956, §11-44-1.[2] The incident which gave rise to the filing of the petition was the stoning by a group of boys of a train as it passed through Warwick on October 23, 1964. Some of the stones broke the train's windshield. Steven, whom we shall sometimes hereinafter refer to as the juvenile, was one of the alleged stone throwers.

A plea of not guilty was entered on his behalf. One week later, a motion was filed by his attorney whereby the court was asked to afford Steven all his constitutional rights

---

[1]Section 14-1-3 G of G. L. 1956 which defines a wayward child reads:

"The term 'wayward' when applied to a child shall mean and include any child—

"1. Who has deserted his home without good or sufficient cause; or

"2. Who habitually associates with dissolute, viscious or immoral persons; or

"3. Who is leading an immoral or viscious life; or

"4. Who is habitually disobedient to the reasonable and lawful commands of his parent or parents, guardian or other lawful custodian; or

"5. Who, being required by chapter 19 of title 16 to attend school, wilfully and habitually absents himself therefrom, or habitually violates rules and regulations of the school when he attends.

"6. Who has on any occasion violated any of the laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles."

Section 14-1-3 F describes as "delinquent" a child who has committed any offense which if committed by an adult would constitute a felony, or who has on more than one occasion violated any federal or state law or any municipal ordinance other than one relating to the operation of a motor vehicle.

[2]A person who violates the provisions of this section may be fined up to $100 or imprisoned for a period of time not in excess of one year. Such an offense under Rhode Island law is classified as a misdemeanor. It is possible that a youth found by the family court to have caused the damage referred to in this section could be committed to a state institution.

during any proceedings held by the family court to determine his waywardness. The motion contained a request that Steven be given a jury trial; that he be afforded the privilege against self-incrimination; and the right to confront and cross-examine his "accusers." On March 24, 1965, a second motion was submitted on behalf of the juvenile whereby he sought to have the court hear evidence which would be offered in support of his original motion. This last motion was granted and on May 18, 1965, the juvenile presented evidence elicited from two witnesses—the assistant superintendent of the Rhode Island Training School for Boys and a detective attached to the juvenile division of the Warwick police department.

The assistant superintendent described in detail the programs and practices which have been established at the training school for the youngsters who have been committed by the family court to this institution. The police officer told of the procedures employed by his department in its detention of a juvenile suspected of having committed some wrongdoing. The gist of his testimony was that in most instances it was the department's policy to release a detained juvenile to his parents for a later appearance in the family court. In exceptional circumstances, he said, a juvenile would be detained at the training school provided the family court had given the police department permission to do so. We note that none of the officer's testimony dealt with the area of the interrogation of juveniles nor for that matter, there is nothing in his testimony to show that Steven was either detained or questioned by the police.

When the hearing concluded, the trial justice stated that he would take the case under advisement. He also intimated that if counsel would frame a question, he would be inclined to certify the case to this court. However, about a year and a half later on December 7, 1966, the court filed

its decision wherein the instant petition was dismissed. The case is before us on the city's appeal from this action.

In a far ranging discussion, the court observed in its decision that a boy committed to the training school is as much confined and deprived of his liberty as an adult sentenced to the adult correctional institutions. The trial justice commented adversely on the prevailing practice of the transfer by the department of social welfare of boys from the training school to the adult correctional institutions pursuant to the provisions of §13-4-12, as amended. The court declared that while such well-known doctrines in the field of juvenile justice such as parens patriae, rehabilitation not punishment, segregation of the juvenile from the adult offenders are "* * * all high-sounding humanitarian and protective words and phrases * * * they are not substitutes for the fundamental constitutional rights which are guaranteed to all of the people of the United States * * *. Minors are entitled to the constitutional guarantees as well as adults." The issue before it, the court stated, was the extent to which the procedural requirements of due process under the 14th amendment to the United States constitution were applicable to juvenile proceedings in the family court. The court then ruled that even though a determination of waywardness or delinquency is not a conviction of a crime, the same constitutional requirements applicable in the usual criminal trial will have to be satisfied in any proceeding held in the family court to adjudge a youth either wayward or delinquent. The specific constitutional requirements mentioned by the family court were the right to counsel, the privilege against self-incrimination, double jeopardy and the right to a trial by jury. The decision concluded with the following sentence: "There was evidence in this case sufficient to show that the police did not comply with the rules as are set forth in this decision and the case is dismissed."

During the pendency of the appeal in this court, the

United States Supreme Court in *In Re Application of
Gault,* 387 U. S. 1, 18 L.Ed.2d 527, 87 S. Ct. 1428, ruled
-that any hearing at which a juvenile is adjudged a delin-
quent and thereby may be committed to a state institution
must satisfy the essentials of due process imposed upon the
states by the 14th amendment. A juvenile, the Court said,
must receive notice of the charges, assistance of counsel,
either retained or appointed, the privilege against self-
incrimination and the right of confrontation and cross-
examination. It is clear, therefore, that all the requests
contained in the juvenile's original motion, with the excep-
tion of his request for a jury trial, find support and approval
in this recent pronouncement by the Supreme Court.

Both parties have devoted much of their arguments and
briefs to the issue of whether a juvenile who is alleged to be
wayward is entitled to a jury trial in the family court. We
believe, however, that on the state of the record any con-
sideration by us of this issue would be premature. It is
obvious that up to the present time there has been no hear-
ing in the family court on whether Steven actually threw
the missile which broke the train windshield. One cannot
tell whether the instant petition will be prosecuted because
some person observed Steven's actions on the day in ques-
tion and can so testify or whether it was the result of certain
admissions made to the police by Steven which may or may
not be considered competent evidence by the family court.
In short, the record in this case is completely devoid of
evidence which could justify or support in any manner
whatsoever the trial justice's assertion that the Warwick
police violated the juvenile's constitutional rights.

The city acknowledges that if we were to adopt the con-
tention of counsel for the juvenile that an adjudicatorv
hearing in the family court on the alleged waywardness of a
youth is a criminal matter, it would have under the long-
standing practice in this state no right of appeal. Assuming

without deciding that such a proceeding is criminal in nature, the prosecution is not altogether precluded from obtaining review of lower court rulings by an appellate tribunal. While it is true that under our law there is no express grant of the privilege to appeal accorded the prosecution from decisions on the merits in criminal cases, this court has stated that the people are not to be deprived of the protection afforded them by the enforcement of criminal laws when lower courts act without jurisdiction, or in excess of their jurisdiction, or in instances when they abuse their jurisdiction. *State* v. *Coleman,* 58 R. I. 6, 190 A. 791. The means by which the people can obtain an inquiry by us into the jurisdictional conduct of lower courts in criminal cases is by the petitioning for a writ of certiorari. *State* v. *Coleman, supra.*

With us certiorari is a prerogative writ and its issuance and the accompanying relief it provides are discretionary and not a matter of right. *Parker* v. *Superior Court,* 40 R. I. 214, 100 A. 305. Originally the scope of review exercised under certiorari was restricted to our supervisory jurisdiction of inferior courts to insure that they would not act beyond the limits of their conferred jurisdiction. *White* v. *White,* 70 R. I. 48, 36 A.2d 661. Certiorari would not ordinarily lie, however, to correct errors by courts in the legitimate exercise of their jurisdiction. *Cohen* v. *Superior Court,* 39 R. I. 272, 97 A. 794. But by virtue of art. XII, sec. 1, of amendments to our state constitution,[3] the enactment of sec. 2 of the Court and Practice Act of 1905, now G. L.

---

[3]"Article XII.

"Section 1. The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. A majority of its judges shall always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law."

1956, §8-1-2,[4] and by decisional law, the function of the writ was extended so that it presently is employed in the exercise of this court's revisory and appellate jurisdiction in reviewing alleged jurisdictional abuses committed by inferior courts. *White* v. *White, supra; Rogers* v. *Rogers,* 98 R. I. 263, 201 A.2d 140.

While ordinarily we restrict the issuance of our extraordinary and prerogative writs to their generally recognized offices, we have said earlier that in any instance when no other remedy is provided we will charily employ such writs as will most efficiently aid us in the exercise of our revisory and appellate powers and in our efforts to promote justice and the fair administration of the law. *McLaughlin* v. *McLaughlin,* 44 R. I. 429, 117 A. 649; *Hyde* v. *Superior Court,* 28 R. I. 204, 66 A. 292.

In *State* v. *Coleman, supra,* this court declared that in criminal cases the state, acting through its legal representative, the attorney general, could seek and obtain appellate review of a lower court ruling by the issuance of a writ of certiorari in those situations where it appeared that an inferior court had either attempted to exercise jurisdiction which it did not possess or had clearly abused its proper jurisdiction. The court in *Coleman* noted that the interest of justice and the protection of the citizenry were compell-

---

[4]"8-1-2. Jurisdiction and powers of court.—The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs of habeas corpus, of error, certiorari, mandamus, prohibition, quo warranto and all other extraodinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law; it may entertain informations in the nature of quo warranto and petitions in equity to determine title to any office; it shall have jurisdiction of petitions for trials and new trials, as provided by law, of bills of exceptions, appeals and certifications to the supreme court, and special cases in which parties having adversary interests concur in stating questions for the opinion of the court as provided by law, and shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state."

ing reasons which required this court, in view of its supervisory and revisory powers over inferior tribunals, to provide such an exceptional right of review in certain instances so long as there was no infringement or impairment of defendant's basic constitutional rights. We can see no valid reason why, on the special facts of the case presently before us, we should not invoke the jurisdictional powers vested in us by our constitution and statutes and treat the instant appeal as a petition for certiorari. The fact that the prosecution here was carried on by a municipality rather than the state should not warrant, in our opinion, a different result from that reached in the *Coleman* case.

The family court in the instant matter clearly abused its jurisdiction when it dismissed the city's petition without any competent evidence present in the record upon which it could rely. Such action neither furthers justice nor is it consistent with the proper administration of the law. The issue of whether or not the constitutional rights of the juvenile in this case were wrongfully deprived him cannot be fairly determined from the evidence on the record. A more detailed hearing of relevant evidence adduced in this regard must be held if such issue is to be resolved.

We therefore hold that the family court abused its jurisdiction when it dismissed the petition to adjudge the juvenile wayward, that its proceedings in relation thereto are void and that the record thereof must be quashed. The papers in this cause are returned to the family court with our decision endorsed thereon.

*Robert C. Hogan,* Assistant City Solicitor, of Warwick, for petitioner-appellant.

*John A. O'Neill, Jr.,* for respondent-appellee.