**WEST RESERVOIR, LLC**

v.

**TOWN OF SMITHFIELD ZONING BOARD OF REVIEW.**

No. 2005–7–Appeal.

Supreme Court of Rhode Island.

Nov. 10, 2005.

Gregory L. Benik, Providence.

Edmund L. Alves, Jr., Providence.

## O R D E R

The moratorium imposed by the General Assembly on the use of the provisions of the Low and Moderate Income Housing Act, G.L. 1956 chapter 53 of title 45 (the act), by private, for-profit developers has generated a number of appeals to the State Housing Appeals Board (SHAB) and, in turn, to this Court. In this case, West Reservoir, LLC, appeals from a decision of SHAB ruling that its application for a comprehensive permit was not substantially complete as of the effective date of the moratorium, and thereby upholding the Town of Smithfield's Zoning Board of Review's (zoning board) eleven-month continuance of the hearing on the application. Because of the interrelationship between the proposed development's residential and commercial uses, SHAB concluded that West Reservoir's application lacked sufficient details describing the project in its entirety.

This case came before the Supreme Court by assignment to the show-cause calendar. After considering the written and oral submissions of the parties and examining the record, we shall proceed to decide the case without further argument or briefing. For the reasons herein set forth, we affirm.

On December 16, 2003, West Reservoir filed a comprehensive permit application with the zoning board to create a "high-quality mixed use community that incorporates 420 mixed-income rental units, an Amenity Center for apartment community residents, a modest convenience retail component for Town, office and rental tenants, and a commercial office component supporting approximately 180,000 gross square feet." The application proposed that eighty-four of the residential units would be set aside for qualified persons of low and moderate income. West Reservoir waived its right to have a hearing convene within thirty days, and the application was scheduled for a hearing before the zoning board on March 31, 2004.

Before that hearing was held, the General Assembly amended the act by imposing a moratorium "on the use of the provisions of [the act] by private for-profit developers, which * * * shall be effective on [February 13, 2004] and shall expire on January 31, 2005 * * *." P.L. 2004, ch. 4, § 1 (codified as amended at G.L. 1956 § 45–53–4(b)). In a letter dated March 12, 2004, the Smithfield town solicitor requested that West Reservoir be prepared "to address how the recent amendments to the [act] impact [its] application." At the hearing on March 31, 2004, the zoning board rejected West Reservoir's argument that the moratorium could not be applied retroactively and voted to continue the hearing on the application to February 23, 2005.

On April 9, 2004, West Reservoir filed a notice of appeal with SHAB, asking it to vacate the decision of the zoning board and to direct the zoning board to approve the application immediately and issue all necessary permits to construct or operate the project. Alternatively, West Reservoir requested that SHAB direct the zoning

board to reschedule promptly a hearing on the merits of the application.

While this appeal with SHAB was pending, the General Assembly once again amended the act, effective July 2, 2004, by adding subsection (f) to § 45–53–6, which states in part:

> "(f) The state housing appeals board shall:
>
> "(1) Upon an appeal of the applicant prior to August 1, 2004, rule on December 1, 2004, on the substantial completeness of applications as of February 13, 2004, that were affected by the moratorium established by [§ 45–53–4(b)]." P.L. 2004, ch. 286, § 10 (codified as amended at § 45–53–6(f)(1)).

The amendment further required SHAB to remand any application determined to be substantially complete to the respective zoning board for hearings. Section 45–53–6(f)(2).[1] The zoning board was not obligated to hear any application affected by the moratorium that was not substantially complete as of February 13, 2004. *Id.*

With respect to West Reservoir's appeal, both parties submitted written memoranda, and SHAB entertained oral arguments on November 8, 2004. SHAB denied the appeal by a six-to-one vote on December 8, 2004, finding that the application was not substantially complete within the meaning of § 45–53–6(f)(1). SHAB reasoned that the application contained insufficient information about the commercial component of the proposed development, rejecting West Reservoir's argument that the residential and commercial uses were distinct because the project was to be constructed in two different phases. Instead, SHAB found a "clear connection between the different phases of the project," concluding that the application "lacks adequate narrative information describing the commercial aspects of this project." SHAB issued a written decision on December 29, 2004, from which West Reservoir timely appealed to this Court.[2]

This Court employs a deferential standard when reviewing a SHAB decision: "our standard of review is analogous to that applied by the Superior Court in considering appeals from local zoning boards [of review]." *Kaveny v. Town of Cumberland Zoning Board of Review,* 875 A.2d 1, 7 (R.I.2005) (quoting *Curran v. Church Community Housing Corp.,* 672 A.2d 453, 454 (R.I.1996)). "A SHAB decision may be reversed by this Court if it violates constitutional or statutory provisions, was made in excess of statutory authority or upon error of law, or was otherwise clearly erroneous in view of the evidence or was otherwise arbitrary or capricious." *Town of Coventry Zoning Board of Review v. Omni Development Corp.,* 814 A.2d 889, 898 (R.I.2003).

In a rather spare Supreme Court Rule 12A statement, West Reservoir poses, without further elaboration, a single issue on appeal: "Did SHAB err in finding that the [a]pplication was not 'substantially complete' pursuant to R.I. Gen. Laws § [ ] 45–53–5?" West Reservoir declined the opportunity permitted by our rules to file a supplemental memorandum. Its written submissions, therefore, fail to direct our attention specifically to any SHAB finding that it argues is clearly erroneous or otherwise arbitrary or capricious. Moreover, our independent review of the record fails

---

1. General Laws 1956 § 45–53–6 was amended by identical amendments to this section, P.L. 2004, ch. 286, § 10 and P.L. 2004, ch. 324, § 10.

2. The decision was amended *nunc pro tunc* on December 29, 2004, because of citation errors in the original decision. All references to the decision herein refer to the amended decision.

to disclose any error that would warrant reversing SHAB's decision in this matter.

Section 45–53–6(f)(1) delineates two alternative standards for SHAB to deem a comprehensive permit application substantially complete. First, the determination of substantial completeness is based on whether there was "substantial completeness of substantially all" of ten criteria set forth in § 45–53–6(f)(1)(i)(A) through (J). Second, even if an application does not satisfy these ten requirements, SHAB must consider the application substantially complete "if the zoning board of review determined the application to be substantially complete and/or acted in [a] manner demonstrating that it considered the application substantially complete for the purposes of reviewing the application * * *." Section 45–53–6(f)(1)(ii).

SHAB summarily rejected West Reservoir's contention that the zoning board acted in a manner demonstrating that it considered the application substantially complete, holding that § 45–53–6(f)(1)(ii) is "inapplicable because the [z]oning [b]oard did not hold a public hearing on the [a]pplication before the start of the moratorium."

West Reservoir had argued to SHAB that at no time between the filing of its application on December 16, 2003, and the public hearing on March 31, 2004, did the zoning board "make any statement or take any action suggesting that the [a]pplication was incomplete." Moreover, it adverted to the town solicitor's letter of March 12, 2004, advising that the March 31 proceedings would be limited to considering the impact of the moratorium on its application

without implying that its application was incomplete. West Reservoir asserted that the zoning board's conduct in accepting the application, failing to advise West Reservoir that the application was incomplete, and scheduling a hearing on the merits demonstrated that the zoning board considered the application complete.

The record before us, however, is devoid of evidence that the zoning board considered any issue other than whether the moratorium had an impact on West Reservoir's application. Here, the zoning board merely scheduled a public hearing, then continued it for eleven months because of the legislatively imposed moratorium. This does not rise to the level of "demonstrating that [the zoning board] considered the application to be substantially complete for purposes of reviewing the application * * *." Section 45–53–6(f)(1)(ii). Therefore, we conclude that SHAB was not clearly erroneous, arbitrary, capricious, or in contravention of law when it ruled that § 45–53–6(f)(1)(ii) did not apply to its analysis.

We now turn to the ten statutory criteria, enumerated in § 45–53–6(f)(1)(i), that SHAB used to review West Reservoir's application. The town solicitor argued to SHAB that West Reservoir had submitted insufficient information about five of the specified elements: (1) the requested list of variances; (2) the site development plans; (3) the report on existing site conditions; (4) a master plan; and (5) sample deed restrictions.[3] Several of the alleged deficiencies resulted from the failure of West Reservoir to delineate in the application the commercial-use aspects of the pro-

---

**3.** The zoning board also asserted that West Reservoir's application was deficient legally because it contravened SHAB Regulation 2.15, which says that a low- and moderate-income housing project may not contain a nonresidential component exceeding 25 per-

cent of the gross square footage of the proposed development. *See* 96–090–001 R.I. Code R. § 2.15(iii) (Weil 2005). SHAB declined to address this argument, however, because the issue was not among the review criteria prescribed by § 45–53–6(f)(1).

ject. The town solicitor asserted that West Reservoir submitted none of the required site information, such as "proposed buildings, streets, drives, parking areas, walls, paved areas, landscaping and open areas for this significant component of the development."

West Reservoir maintained before SHAB that its application did not seek approval for the future commercial office space development, which was designated as Phase II. Rather, West Reservoir contended that the application was substantially complete as it pertained to the residential component of the proposed project, that West Reservoir may or may not undertake Phase II in the future, and that West Reservoir included Phase II in the application for informational purposes only and at the town's request.

In its analysis, SHAB determined that "[t]he pivotal issue * * * concerns the interrelationship between the project's residential and commercial components." Viewing the evidence as a whole, SHAB found "a clear connection between the different phases of the project." As such, SHAB concluded that "because of the magnitude of this project and the clear interrelationship between its residential and commercial uses, * * * the [a]pplication lacks sufficient details describing the proposal *in its entirety.*"

Upon our review of the record, we are satisfied that SHAB's decision was not clearly erroneous. SHAB specifically referred to the proposed use as stated in the application as the "[c]reation of a * * * mixed use community that incorporates * * * a commercial office space component * * *," as well as conceptual plan drawings and a tabulation sheet that refer to both the residential and commercial uses. With no guidance from West Reservoir to inform our review of the record, we conclude that SHAB was neither arbitrary, capricious, nor clearly erroneous in deciding that the commercial aspects of the project were an integral part of the proposed development, and that the application therefore was not substantially complete as of February 13, 2004.

For the foregoing reasons, we affirm SHAB's decision denying West Reservoir's appeal because its comprehensive permit application was not substantially complete as of February 13, 2004, to which board we remand the record in this case.[4]

4. In a supplemental memorandum, the town solicitor argues: (1) the moratorium prohibited West Reservoir from taking any action under the act, including filing an appeal to SHAB, and that SHAB could have dismissed it for lack of jurisdiction; (2) that the action of the zoning board on March 31, 2004 to continue the hearing was not a denial of the application and thus was not appealable; and (3) that the amendments to § 45–53–6(f) did not revive West Reservoir's "invalid" appeal, but merely allowed for-profit developers to raise the issue of substantial completeness by appeals to SHAB filed between July 2, 2004 and August 1, 2004. These arguments were not raised before SHAB, and we decline to address them within the context of this appeal.