**NEW HARBOR VILLAGE, LLC**

v.

**TOWN OF NEW SHOREHAM ZONING BOARD OF REVIEW.**

**No. 2005–20–Appeal.**

Supreme Court of Rhode Island.

April 3, 2006.

Richard A. Licht, Esq., Providence, for Plaintiff.

Donald J. Parker, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

Does a for-profit developer have a right of appeal to the Supreme Court, pursuant to the Rhode Island Low and Moderate Income Housing Act, from a State Housing Appeals Board (SHAB) substantial completeness ruling? Despite a four to three vote finding that an application for a comprehensive building permit submitted to the Town of New Shoreham Zoning Board of Review (town or defendant) by the plaintiff, New Harbor Village, LLC (New Harbor or plaintiff), met the test of substantial completeness, SHAB refused to remand the application to the town for further proceedings. The SHAB concluded that a majority of favorable votes from the entire SHAB board was necessary before an application could be remanded to the town for further proceedings. Be-

cause the plaintiff failed to obtain the requisite majority of five favorable votes from the nine-member SHAB, the board held that the substantial completeness appeal failed.

The plaintiff appealed SHAB's decision to this Court. In its appeal, New Harbor avers: (1) that substantial completeness determinations made pursuant to G.L.1956 § 45–53–6 do not require a majority vote; (2) that the three SHAB dissenters relied on impermissible criteria in voting against New Harbor's application; (3) that New Harbor's application was substantially complete; (4) that the town zoning board of review acted as if the application was substantially complete; and (5) that the moratorium imposed by the General Assembly was unconstitutional. Conversely, defendant challenges the jurisdiction of both SHAB and this Court to entertain New Harbor's appeal. Additionally, defendant argues that a majority vote is required for substantial completeness determinations pursuant to this Court's holding in *Union Village Development Associates v. North Smithfield Zoning Board of Review,* 738 A.2d 1084, 1086 (R.I.1999). For the reasons stated herein, we are of the opinion that New Harbor's appeal is not appropriately before this Court.

## Facts and Travel of the Case

On January 21, 2004, plaintiff submitted an application for a comprehensive permit to develop a 6.16–acre, seventy-eight-unit residential development. The application was filed with the town pursuant to the Rhode Island Low and Moderate Income Housing Act, G.L.1956 chapter 53 of title 45. The zoning board of review scheduled the application for a hearing on February 23, 2004.

As anticipated, however, the General Assembly amended the act and imposed a moratorium on all pending comprehensive permit applications by for-profit developers.[1] The moratorium took effect on February 13, 2004, ten days before New Harbor's application was scheduled to be heard by the town. As a result, the town did not hear New Harbor's application.

On March 15, 2004, New Harbor filed a notice of appeal with SHAB seeking either the approval of its comprehensive permit application or an order directing the zoning board of review to conduct a hearing. The SHAB did not act. In the months that followed, the General Assembly made substantial changes to the Low and Moderate Income Housing Act—including a procedure for determining which applications would proceed under the former act

1. **General Laws 1956 § 45–53–4** provides in pertinent part:

   "**Procedure for approval of construction of low or moderate income housing.**

   " * * *

   "(b)(1) The general assembly finds and declares that in January 2004 towns throughout Rhode Island have been confronted by an unprecedented volume and complexity of development applications as a result of private for-profit developers using the provisions of this chapter and that in order to protect the public health and welfare in communities and to provide sufficient time to establish a reasonable and orderly process for the consideration of applications made under the provisions of this chapter, and to have communities prepare plans to meet low and moderate income housing goals, that it is necessary to impose a moratorium on the use of comprehensive permit applications as herein provided by private for-profit developers; a moratorium is hereby imposed on the use of the provisions of this chapter by private for-profit developers, which moratorium shall be effective on passage and shall expire on January 31, 2005 and may be revisited prior to expiration and extended to such other date as may be established by law. Notwithstanding the provisions of subsection (a) of this section, private for-profit developers may not utilize the procedure of this chapter until the expiration of the moratorium."

and which would be decided in accordance with the amended version. Section 45–53–6, adopted on July 2, 2004, provided in relevant part that SHAB shall, "[u]pon an appeal of [an] applicant prior to August 1, 2004, rule on December 1, 2004, on the substantial completeness of applications as of February 13, 2004, that were affected by the moratorium established by § 45–53–4(b)." Section 45–53–6(f)(1).[2] Those applications found to be substantially complete as of February 13, 2004, were to be remanded to the municipality for hearings to be conducted (or resumed) according to the pre-moratorium comprehensive permit review procedures. All other applications that SHAB found not to be substantially complete were subject to heightened procedural and density requirements. Section 45–53–6–(f)(2).[3]

On July 1, 2004, in anticipation of action by the General Assembly, SHAB moved forward on New Harbor's appeal and treated it as an appeal seeking a substantial completeness determination. First, SHAB requested that the town make its own findings concerning the substantial completeness of New Harbor's comprehensive permit application. On July 26, 2004,

2. **Section 45–53–6** provides in relevant part:

"(f) The state housing appeals board shall:

"(1) Upon an appeal of the applicant prior to August 1, 2004, rule on December 1, 2004, on the substantial completeness of applications as of February 13, 2004, that were affected by the moratorium established by § 45–53–4(b).

"(i) The determination of substantial completeness shall be based on whether there was on or before February 13, 2004, substantial completeness of substantially all of the following:

"(A) A written request to the zoning board of review to submit a single application to build or rehabilitate low or moderate income housing in lieu of separate applications to the application local boards;

"(B) A written list of variances, special use permits and waivers requested to local requirements and regulations, including local codes, ordinances, by-laws or regulations, including any requested waivers from the land development or subdivisions regulations, and a proposed timetable for completion of the project;

"(C) Evidence of site control;

"(D) Evidence of eligibility for a state or federal government subsidy, including a letter from the funding agency indicating the applicant and the project;

"(E) Site development plans showing the locations and outlines of proposed buildings; the proposed location, general dimensions and materials for street, drives, parking areas, walks and paved areas; proposed landscaping improvements and open areas within the site; and the proposed location

and types of sewage, drainage and water facilities;

"(F) A report on existing site conditions and a summary of conditions in the surrounding areas, showing the location and nature of existing buildings, existing street elevations, traffic patterns and character of open areas, including wetlands and flood plains, in the neighborhood;

"(G) A tabulation of proposed buildings by type, size (number of bedrooms, floor area) and ground coverage and a summary showing the percentage of the tract to be occupied by buildings, by parking and other paved vehicular areas and by open spaces;

"(H) A master plan, if the development proposal is for a major or minor land development plan or a major or minor subdivision;

"(I) [A] sample land lease or deed restrictions with affordability liens that will restrict use as low and moderate income housing units for a period of not less than thirty (30) years; and

"(J) The list of all persons entitled to notice in accordance with § 45–24–53."

3. **Section 45–53–6(f)(2)** provides in relevant part:

"[T]he local review board shall not be obligated to hear, and may deny, any application affected by the moratorium unless it was determined to be substantially complete in accordance with the provisions of subdivision (1) of this subsection, and the local review board may require such additional submissions as may be specified by the town or necessary for the review of the application ."

the town concluded that New Harbor's application was not substantially complete as of February 13, 2004 (the cutoff date set by the General Assembly).

On November 29, 2004, SHAB convened a hearing to consider for itself whether New Harbor's application was substantially complete. On December 8, 2004, SHAB voted four to three that the application was substantially complete. However, SHAB declined to remand New Harbor's application to the town for comprehensive permit review. Instead, because New Harbor failed to garner the requisite five favorable votes, the town's decision was upheld. This appeal ensued.

## I

### Appropriateness of Appellate Review

The defendant raises two jurisdictional challenges to New Harbor's appeal that first must be addressed. The defendant contends that SHAB was without jurisdiction to entertain New Harbor's appeal because the appeal was premature. Second, defendant contends that this Court is without jurisdiction to hear New Harbor's appeal from SHAB's substantial completeness determination because it is interlocutory. For the reasons that follow, we conclude that New Harbor's appeal, although appropriately before SHAB, must fail because there is no right of appeal to this Court. A party seeking review of substantial completeness determinations by SHAB must do so by petition for writ of certiorari.

### a. The Appeal to SHAB

The defendant contends that New Harbor's appeal to SHAB, filed March 15, 2004, was procedurally defective and should not have been treated as a request for a substantial completeness determination in accordance with § 45–53–6(f)(1). According to defendant, New Harbor filed its appeal before the General Assembly adopted the post-moratorium procedure for hearing applications. July 2, 2004, was the effective date of the amendment providing for a substantial completeness determination, as set forth in § 45–53–6(f)(1). The defendant contends that because New Harbor's appeal was filed three and one-half months before that date, SHAB should not have considered the appeal on the basis of substantial completeness. We disagree.

As plaintiff correctly argues, such an approach would promote form over substance—something that this Court consistently has refused to do. *See, e.g., Duffy v. Dwyer,* 847 A.2d 266, 270–71 (R.I.2004) (a quitclaim deed lacking the phrase "free act and deed" was not void because finding otherwise would "exalt form over substance"); *Direct Action for Rights and Equality v. Gannon,* 819 A.2d 651, 662 (R.I.2003) ("Although we prefer that litigants abide by the rules of court, we decline to overturn the trial justice's decision to modify [the order] based on the absence of a formal motion to vacate. To do so would elevate form over substance.").

Moreover, New Harbor falls squarely within the class of applicants that the substantial completeness amendment was intended to address. The record discloses that SHAB elected to treat New Harbor's March filing as an "appeal of the applicant prior to August 1, 2004" so that SHAB could rule "on December 1, 2004, on the substantial completeness of applications as of February 13, 2004"—the date of the moratorium. Section 45–53–6(f)(1). We deem this to be a reasonable interpretation of the statute by the agency charged with its enforcement. *See Whitehouse v. Davis,* 774 A.2d 816, 818 (R.I.2001) ("[A]n administrative agency is accorded great deference in interpreting a statute whose ad-

ministration and enforcement have been entrusted to the agency."). The record discloses that New Harbor filed its appeal before August 1, 2004, and SHAB decided that said appeal was sufficient for a substantial completeness determination. Moreover, even if the appeal was untimely, SHAB was entitled to overlook a premature filing of an appeal, particularly an appeal concerning the same subject matter.

This Court has overlooked the early filing of an appeal on occasion and, for similar reasons, we decline to hold that New Harbor's appeal to SHAB was fatally defective. *See, e.g., McBurney v. The GM Card*, 869 A.2d 586, 589 n. 3 (R.I.2005) ("This Court generally has overlooked the premature filing of a notice of appeal."); *Fossa v. Fossa*, 869 A.2d 58, 59 n. 2 (R.I. 2005) (treating defendant's appeal as timely even though the notice of appeal was filed seven days before entry of the order from which appeal was taken). We are satisfied that SHAB was vested with the authority to rule on the substantial completeness of New Harbor's comprehensive permit application.

However, New Harbor's route to the Supreme Court presents a different question.

### b. The Appeal to this Court

The defendant contends that New Harbor's appeal is not properly before this Court because of its interlocutory status. According to defendant, the act "provides for appeal to this Court from SHAB decisions that review a municipal decision to grant with conditions or deny an application." The defendant further contends that SHAB's decision in this case was not

a denial of New Harbor's application or an appealable final judgment. Rather, according to defendant, it was a determination that New Harbor must return to the town "with a more complete application." For the reasons that follow, we conclude that the Low and Moderate Income Housing Act does not afford a right of appeal to the Supreme Court from an adverse substantial completeness determination.[4] Consequently, New Harbor's appeal is not appropriately before this Court.

### 1. Supreme Court Jurisdiction

Article 10, section 2, of the Rhode Island Constitution sets forth the jurisdiction of this Court:

"The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have the power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law."

Additionally, the General Laws provide this Court with broad supervisory powers over other courts so that we may (1) correct and prevent error and abuses and (2) issue extraordinary writs and processes in the interests of justice and the due administration of the law. *See* G.L.1956 § 8–1–2. This Court has acknowledged that our appellate jurisdiction is guided by the pronouncements of the Legislature. *See Littlefield v. Peckham*, 1 R.I. 500, 507 (1851) (The Legislature has regulated this Court's appellate procedure from time to time, including prescribing the manner in which an appeal shall be brought and the time within which the right shall be exercised.).

---

4. Although the Court previously has addressed the issue of substantial completeness, *see West Reservoir, LLC v. Smithfield Zoning Board of Review*, 884 A.2d 977 (R.I.2005), we now explore in detail the manner in which relief from a substantial completeness determination may be sought in this Court.

We note that, although the General Assembly may define the parameters of this Court's appellate jurisdiction, it cannot divest the Court of its constitutional authority to review decisions of the various state courts that exercise judicial or quasi-judicial functions or to hear and decide constitutional issues. David A. Wollin, *Rhode Island Rules of Appellate Procedure with Commentaries*, Intro. at viii & n. 8 (West 2004) (citing *In re Advisory Opinion to the Governor (Casino)*, 856 A.2d 320, 325–26 n. 2 (R.I.2004)); *see also Fox v. Norberg*, 110 R.I. 418, 423–24, 293 A.2d 520, 524 (1972) (The General Assembly's power to limit the right of appeal while unquestioned, nevertheless is subject to the power of this court, under article 10, section 2,[5] of the state constitution, to review by certiorari the decisions of the other tribunals.).

■ There are two separate and distinct procedural vehicles that allow a party to obtain review by the Supreme Court—appeals and petitions for discretionary review.[6] Appeals are taken as of right and are prescribed by law. A petition for discretionary review, as the name implies and in contrast to an appeal, is granted at the discretion of the Court. *See In re Little*, 103 R.I. 301, 307, 237 A.2d 325, 328 (1968) (certiorari is a prerogative writ and its issuance and the relief it provides are discretionary and not a matter of right).

■ The caseload of this Court principally consists of appeals from the Superior Court and from the Family Court. Joseph R. Weisberger, *Rhode Island Appellate Practice* at 4 (3d ed.1993). However, the Court may review the decisions of other tribunals and forums by either statutory or common law certiorari. *See id.; see, e.g.,* G.L.1956 § 28–35–29 (review by certiorari of decisions of Appellate Division of the Workers' Compensation Court); G.L.1956 § 39–5–1 (establishes review of decisions or orders of the Public Utilities Commission); G.L.1956 § 42–35–16 (to obtain review of a contested case pursuant to the Administrative Procedures Act, an aggrieved party must file a petition for writ of certiorari); *Krivitsky v. Town of Westerly*, 849 A.2d 359, 362–63 (R.I.2004) (review by certiorari of town council licensing decisions); *Van Daam v. DiPrete*, 560 A.2d 953, 954 (R.I.1989) (Supreme Court review of Board of Elections decisions was discretionary given the absence of a statutorily prescribed right of appeal).

The statutory scheme with which we are now confronted expressly affords a right of appeal to this Court of a limited class of SHAB decisions. Direct appeal to this Court from an agency decision is a departure from our traditional appellate jurisprudence.[7] We can only conclude that the Legislature provided for direct review in the Supreme Court in order to expedite the resolution of these disputes. *See* § 45–53–2 ("[I]t is imperative that action is taken immediately to assure the availability of affordable, accessible, safe, and sanitary housing."). However, as this case and other SHAB appeals have shown, fast

---

**5.** Formerly article 12 of the state constitution.

**6.** Other methods by which cases are brought before the Court, in addition to its revisory or appellate jurisdiction, include requests for advisory opinions by the Governor and either house of the General Assembly and certification of questions of law from other courts or the courts of the United States. *See* R.I. Const. art. 10; sec. 3 (advisory opinion jurisdiction); Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure (certification of questions of law from federal courts); G.L.1956 § 9–24–25 (certification on agreed statement of facts); G.L.1956 § 9–24–27 (certification of questions of importance).

**7.** We note that similar legislation in Massachusetts provides for *Superior Court* review of housing appeals board decisions. *See* Mass. Gen. Laws Ann. ch. 40B, § 22 (West 2004).

track review is not achieved by circumventing the usual travel of an administrative appeal. Rather, this *sui generis* appellate remedy has failed to accomplish its intended result.[8] Viewed in this light, we deem it necessary to construe the appellate provisions of the act and limit the right of appeal to the specific instances set forth in the act. *See Potter v. Chettle*, 574 A.2d 1232, 1234 (R.I.1990) ("[S]tatutes prescribing the time and manner of procedure to be followed by a litigant attempting to secure a review of his or her case in an appellate court are to be strictly construed.").

## 2. SHAB Appeals

Appellate review for low and moderate income housing decisions is provided for in § 45–53–5.[9] That statute specifies two and only two classes of housing decisions that may be appealed first to SHAB and then *directly to this Court:* (1) a denial of an application and (2) a grant of an application with conditions that are alleged to be so onerous as to render the housing project infeasible. *Id.* There is no provision in the statute for direct appeal from an adverse substantial completeness determination made under § 45–53–6(f)(1).[10] New Harbor, however, urges that we consider such an appeal.

First, plaintiff contends that SHAB's refusal to remand its application for expedited review procedures was a *de facto* denial of its application such that it had a right to appeal SHAB's decision in accordance with § 45–53–5.[11] New Harbor further argues that the decision contained sufficient elements of finality and was appealable to this Court as an exception to the Court's final judgment rule. *See* G.L.1956 § 9–24–1;[12] *McAuslan v. McAuslan*, 34 R.I. 462,

---

8. The disposition of SHAB appeals is far from expeditious. *See e.g., Housing Opportunities Corp. v. Zoning Board of Review of Johnston*, 890 A.2d 445 (R.I.2006) (SHAB denied plaintiff's appeal on January 27, 2004; Supreme Court rendered its opinion on January 11, 2006); *JCM, LLC v. Cumberland Zoning Board of Review*, 889 A.2d 169 (R.I.2005) (SHAB denied plaintiff's appeal on December 2, 2003, and on December 27, 2005, Supreme Court remanded case back to the zoning board of review); *Kaveny v. Cumberland Zoning Board of Review*, 875 A.2d 1 (R.I.2005) (applicant filed for comprehensive permit in September 2002; on June 13, 2005, this Court remanded the application back to SHAB for further consideration).

9. **Section 45–53–5** provides in relevant part:
    "(a) Whenever an application filed under the provisions of § 45–53–4 is denied, or is granted with conditions and requirements that make the building or operation of the housing infeasible, the applicant has the right to appeal to the state housing appeals board established by § 45–53–7, for a review of the application. The appeal shall be taken within twenty (20) days after the date of the notice of the decision by the local review board by filing with the ap-

peals board a statement of the prior proceedings and the reasons upon which the appeal is based.
    "* * *
    "(c) * * * The [SHAB] decision and order may be appealed in the [S]upreme [C]ourt."

10. The same holds true for determinations, made under § 45–53–6(f)(1)(ii), considering whether the town zoning board of review, "acted in a manner demonstrating that it considered the application substantially complete."

11. In formulating this argument, we note that New Harbor failed to allege in its brief to this Court that SHAB's decision constituted a denial of its application; opting instead to focus its appellate argument on the final judgment rule and its related exceptions. New Harbor's argument that SHAB's decision amounted to a denial was raised for the first time during argument before this Court.

12. **General Laws 1956 § 9–24–1** provides in pertinent part: "Any party aggrieved by a final judgment, decree, or order of the [S]uperior [C]ourt may, within the time prescribed by applicable procedural rules, appeal to the [S]upreme [C]ourt."

472, 83 A. 837, 841 (1912).[13]  We do not agree with either of these contentions.

■ Simply stated, SHAB's vote, in this case, was not a denial of New Harbor's application. The limited circumstances under which appellate review may be undertaken in this Court are set forth in § 45–53–5.  New Harbor contends that an unfavorable substantial completeness determination, as set forth in § 45–53–6, should be considered a denial.  However, these two provisions are distinctly different in character and contain varying procedures that purposefully reach different outcomes.

After the moratorium, the General Assembly authorized SHAB to examine comprehensive permit applications pending as of February 13, 2004, and determine whether an application met the test of substantial completeness as set forth in the statute.  See § 45–53–6(f)(1).  The obvious purpose of this subsection was to cull out eleventh-hour applications that were completed and filed hastily to avoid the well-publicized impending moratorium for all comprehensive permit applications submitted by for-profit developers. A SHAB determination under this subsection dictates whether an application will proceed under the pre-moratorium or post-moratorium permit review procedure.  It is not a decision on the merits.

When SHAB refused to remand New Harbor's application for a comprehensive permit review in accordance with the prior act, it neither denied nor rejected it. Rather, its four to three vote amounted to a denial of New Harbor's appeal from defendant's determination that the application did not meet the test of substantial completeness.  The application therefore, must proceed, if at all, under the post-moratorium review procedure.

Additionally, plaintiff's contention that, under § 9–24–1, SHAB's decision is an appealable final order or contains such elements of finality as to warrant immediate appellate review is misplaced.  Section 9–24–1 provides that "[a]ny party aggrieved by a final judgment, decree, or order of the [S]uperior [C]ourt may * * * appeal to the [S]upreme [C]ourt."  The SHAB's substantial completeness determination is not a "final judgment, decree, or order of the [S]uperior [C]ourt."  Id. (Emphasis added.)  Consequently, New Harbor's reliance on this provision and the related exceptions thereto, including the McAuslan doctrine, is rejected.

■ After thorough review, it is our conclusion that the Low and Moderate Income Housing Act does not afford plaintiff the right to appeal from a determination by SHAB that the application failed to meet the test of substantial completeness.  In our opinion, defendant's characterization that this amounts to an absence of jurisdiction in this Court is incorrect.  Despite the absence of a statutorily prescribed right of appellate review, this Court is vested with jurisdiction to take up this dispute in accordance with its constitutionally prescribed, "final revisory and appellate jurisdiction upon all questions of law and equity."  R.I. Const. art. 10, sec. 2;  see Fayle v. Traudt, 813 A.2d 58, 61 (R.I.2003) ("The appropriate method to seek review of an interlocutory or otherwise nonappealable order is by filing and serving a petition for certiorari.").  Thus, relief may be sought in this Court by way

13. In McAuslan v. McAuslan, 34 R.I. 462, 472, 83 A. 837, 841 (1912), we stated:

"Besides those provided for in the statute, other instances may present themselves of decrees, in a strict sense interlocutory, which by reason of their possible injurious consequences require an immediate review, and must be held for this reason to have such elements of finality as to permit an immediate appeal."

of writ of certiorari. However, we decline to exercise our discretionary jurisdiction in this case. Consequently, New Harbor is not appropriately before the Court.

## II

### Majority Vote

Even if this Court were to address the merits of plaintiff's arguments, relief nonetheless would be denied because plaintiff was unable to garner five favorable votes in accordance with this Court's holding in *Union Village Development Associates,* 738 A.2d at 1086.

■ The Low and Moderate Income Housing Act provides that appeals to SHAB from a denial or an approval with conditions shall be decided by a majority vote. Section 45–53–5(c). In *Union Village,* we considered the majority vote requirement of § 45–53–5 in the context of a three to one plurality vote and concluded that:

> "[B]ecause [SHAB is] invested with significant discretionary power to review low and moderate income housing decisions made by and affecting every city and town government in this state, such broad power should be exercised only by a majority vote of the entire nine-member state board." *Union Village,* 738 A.2d at 1086.

Consequently, a plurality of votes cast by SHAB members is insufficient as a matter of law. *Id.*

New Harbor argues that *Union Village* does not apply to this situation because *Union Village* was decided on the basis of § 45–53–5 of the act, not § 45–53–6—the procedure for substantial completeness determinations. According to New Harbor, this distinction is important because § 45–53–5 contains an explicit majority vote requirement, while § 45–53–6 contains no such requirement. New Harbor contends that the absence of the majority vote language in § 45–53–6 demonstrates that the General Assembly never intended it to apply to substantial completeness determinations.

However, we need not reach the merits of this argument because New Harbor has elected to pursue this appeal as though SHAB's decision was a *de facto* denial of its application. New Harbor cannot in one instance argue that SHAB's decision was a denial of its application and therefore a final appealable order and in the next instance argue that this Court's holdings with respect to appellate review do not apply. Accordingly, we are of the opinion that the majority vote requirement applies to SHAB's substantial completeness determination. In accordance with *Union Village,* 738 A.2d at 1086, five favorable votes were needed for New Harbor's application to be remanded back to the town.

## III

### Constitutional Challenges

■ New Harbor alleges that the act's moratorium that halted proceedings related to comprehensive permit applications submitted by for-profit developers violated the Due Process and Equal Protection Clauses of the United States Constitution. However, because the moratorium has ended, we deem these arguments moot.

### Conclusion

For the reasons stated herein, we conclude that an applicant for a comprehensive permit in accordance with the Low and Moderate Income Housing Act does not have a right of appeal to the Supreme Court from an adverse finding of substantial completeness by the State Housing Appeals Board. Consequently, the plain-

tiff's appeal is not properly before this Court and it is dismissed.